```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA

       - against -                        MEMORANDUM AND ORDER

LAMAR WILLIAMS                            22 Cr. 600 (NRB)

              Defendant.

-------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court is defendant Lamar Williams's ("defendant" or "Williams") motion to suppress evidence obtained from (1) an allegedly unduly suggestive and unreliable identification of defendant and (2) allegedly illegal searches of two of defendant's cell phones.  See ECF Nos. 18, 19 ("Def. Mot."). Defendant also seeks to preclude evidence of other crimes, wrongs, or bad acts pursuant to Rule 404(b) of the Federal Rules of Evidence, or, in the alternative, to require the Government to disclose any such evidence on which it intends to rely at trial.  Def. Mot. at 11-13.  Finally, defendant requests the early production of certain witness statements and Brady and Giglio material.  Id. at 13-15. For the following reasons, defendant's motions are denied in their entirety.

## BACKGROUND

Williams, an alleged member of a violent subset of the national Bloods gang, the Mac Baller Brims, was indicted on

November 1, 2022 on one count of racketeering conspiracy in violation of 18 U.S.C. §§ 1961(1), (5); one count of murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1), 2; and one count of murder through use of a firearm in violation of 18 U.S.C. §§ 924(j), 2.  See ECF No. 1 ("Indictment").

According to the Indictment, on August 11, 2013 at approximately 1:25 a.m., Williams instigated a fight with Rasheed Barton (the "Victim"), a rival gang member, after which Williams shot and killed him.  Id. ¶¶ 12, 15, 16; Def. Mot. at 3.  The Government alleges that Williams did so at the direction of the Mac Baller Brims in retaliation for gang and drug-related disputes and in exchange for compensation and an improved position within the gang.  Indictment ¶¶ 12, 15; ECF No. 25 ("Gov't. Opp.") at 1-2.  Williams is also charged with other offenses relating to his participation in the gang, including the sale of controlled substances and witness tampering.  Indictment ¶¶ 8, 10-11.

With respect to the identification issue, on May 2, 2014, the New York City Police Department ("NYPD") arrested a man (the "Witness") for an unrelated crime.  Def. Mot. at 3.  During an NYPD detective's interview of the Witness, the Witness stated that he had observed the lead up to the Victim's murder while walking back from a drug sale.  Gov't. Opp. at 2-3.  The Witness recounted

seeing, from about 50 feet away, the perpetrator and the Victim fighting verbally and then physically, after which the perpetrator drew a firearm.  Id.  The Witness told the detective that he continued to watch as the Victim ran away and the perpetrator pursued him.  Id. at 3.  After they passed behind a vehicle and out of view, the Witness heard gunshots.  Id.

According to the Government, the Witness also told the detective that the Witness had known the perpetrator for years (having grown up in the same neighborhood) and identified him by his nickname, "Black."  Id. at 2, 9.  In fact, the Witness stated that, after witnessing the altercation, he later asked the perpetrator about the shooting and the perpetrator responded by admitting that he had shot the Victim.  Id. at 3, 10, 12.  When the detective displayed a single photograph of Williams to the Witness on May 2, 2014, the Witness identified Williams as the perpetrator he had seen the night of August 11, 2013.  Id. at 3.  On June 15, 2021, the Witness testified before a grand jury against defendant.  Id. at 2.

Regarding the search and seizure of defendant's cellphones, on April 3, 2014, the defendant was shot by an unknown person and taken to the hospital for treatment.  Def. Mot. at 3.  During Williams's hospital stay, NYPD officers questioned him about the

identity of the individual who shot him and took his cell phone over his objections.  Id. at 3.  On November 5, 2014, defendant was arrested for selling controlled substances in violation of New York Penal Law § 220.39.  Id. at 3, id. Ex. A.  Law enforcement took a second cell phone belonging to Williams, though ultimately this arrest was voided and the charges were dismissed.  Id. at 3.  Neither cell phone was returned to Williams.

On September 18, 2023, defendant moved to suppress evidence stemming from the photographic identification and the search of his two cell phones, and to compel the Government to make certain disclosures.  See Def. Mot.  The Government filed its response on October 18, 2023.  See Gov't. Opp.  The motion was fully briefed on November 10, 2023.  ECF No. 23 ("Def. Reply").

## DISCUSSION

**I.  Motion to Suppress Identification Evidence**

**A. Legal Standard**

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from "a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." Perry v. New Hampshire, 565 U.S. 228, 237 (2012).  "Only when

evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' have we imposed a constraint tied to the Due Process Clause." Id. (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

"When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). If pretrial identification "infected by improper police influence" results in a "very substantial likelihood of irreparable misidentification," then a court "must disallow presentation of the evidence at trial." Perry, 565 U.S. at 232 (internal quotation marks and citations omitted).

To determine whether identification testimony should be precluded, the court engages in a two-part "sequential inquiry." Raheem, 257 F.3d at 133. First, the Court examines "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." Id. If not, there is "no due process obstacle to admissibility" and the reliability of the identification becomes "a matter for the jury." Id. (internal quotation marks and citations omitted). However, if the court determines that "the procedures were suggestive, it must

then determine whether the identification was nonetheless independently reliable." Id. The factors that support reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2559 (2018) (internal quotation marks and citations omitted). "None of these factors standing alone is dispositive . . . ; instead, reliability is assessed 'in light of the totality of the circumstances.'" Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009) (quoting Raheem, 257 F.3d at 135). "In sum, the identification evidence will be admissible if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability." Id. (quoting Raheem, 257 F.3d at 133).

Courts in this Circuit have "consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one." Wiggins v. Greiner, 132 F. App'x 861, 865 (2d Cir. 2005) (internal citation omitted). However, courts also routinely admit identifications that are obtained by

the use of suggestive procedures where there is an independent basis for reliability. United States v. Jimenez, No. 20 Cr. 122 (LTS), 2020 WL 7231062, at *2 (S.D.N.Y. Dec. 8, 2020).

Among other things, that independent basis may derive from the witness's past relationship with the defendant. See, e.g., Wiggins, 132 F. App'x at 865 (The witness's "ability to identify [the defendant]" by "provid[ing] his name" was "even more convincing" than a physical description of the defendant); Jimenez, 2020 WL 7231062, at *2 ("Because the witness here indicated that he knew the [defendant], the confirmatory identification procedure was not unduly and unnecessarily suggestive."); United States v. Hardy, No. 10 Cr. 1123 (JSR), 2011 WL 7782582 (S.D.N.Y. Jan. 25, 2011) (finding that the Government's display of "a confirmatory photograph of a person the witness has indicated that he already knows" was "perfectly acceptable" and not "unduly suggestive"); United States v. Ramos-Cruz, No. 11 Cr. 151 (KS), 2014 WL 9931353, at *2 (W.D.N.Y. July 15, 2014) (finding that a single photo identification was confirmatory because the witness had previously purchased narcotics from the defendant and helped facilitate the defendant's narcotics sales). An independent basis may also arise from the witness's observation of the crime. See, e.g., Wiggins, 132 F. App'x at 865 ("[The

witness's] opportunity to view the murderer from a distance of only fifty feet with the benefit of streetlight illumination was sufficient to afford him an independent basis for a reliable identification.").

### B. Application

Here, the Court finds that the Witness's identification of defendant is independently reliable. First, the Witness had a past relationship with the defendant, which defendant does not dispute. As he told the NYPD detective and the grand jury, the Witness grew up in the same neighborhood as defendant, Gov't. Opp. at 3, and even knew defendant by his nickname, id. at 2, 9. Moreover, the Witness also reported that, following the shooting, he spoke to defendant about the events that he witnessed. Id. at 3, 10. According to the Witness's recollection of that conversation, defendant admitted to killing the Victim and explained that he decided to do so after the Victim started winning the fight. Id. at 3.

Second, the Witness observed the events immediately prior to the crime. As the Witness recounted to the NYPD detective and the grand jury, and as described above, he witnessed the defendant and the Victim begin to fight and defendant draw a gun. Id. at 2-3, 11-12. The Witness stated that he then watched the Victim flee.

-8-

Id.  When the Victim and defendant ran behind a vehicle, the Witness indicated that he heard gunshots.  Id. at 3.  Thus, the Witness had ample opportunity to observe defendant, which constitutes "an independent basis for a reliable identification."  Wiggins, 132 F. App'x at 865. Moreover, defendant exhibited a high degree of attentiveness, "paus[ing] for a minute" to observe the fight, and told the Government that he was "100% sure" that the individual in the photograph was the same person he witnessed fighting with the victim on August 11, 2013.  Gov't. Opp. at 11-12; Neil v. Biggers, 409 U.S. 188, 199-200 (1972).  Thus, regardless of the potential suggestiveness of a single photograph or its appearance on NYPD letterhead, Def. Reply at 7-9, the Witness's strong independent basis for reliably identifying defendant "vitiate[s] any taint from the suggestive procedure."  United States v. Little, 640 F. Supp. 3d 306, 319 (S.D.N.Y 2022).

Defendant advances several arguments challenging the reliability of the Witness's identification.  First, he suggests that the amount of time that passed between the murder and the identification -- approximately nine months -- contributes to the inherent unreliability of the identification.  Def. Mot. at 5; Def. Reply at 8.  This argument is without merit.  Courts in this

Circuit have regularly found that periods of time exceeding nine months may pass without compromising the reliability of an eyewitness's identification, especially when other strong indicia of reliability exist. See, e.g., United States v. Jacobowitz, 877 F.2d 162, 168 (2d Cir. 1989) (holding that a ten-month gap, though "a longer delay than is desirable," did not render identification unreliable given the other factors strongly indicating reliability); United States v. Wagner, No. 20 Cr. 410 (NSR), 2022 WL 19181, at *4 (S.D.N.Y. Jan. 3, 2022) (holding that the reliability of identifications that took place fifteen months after the alleged offense weighed in favor of the Government, in part because of the witnesses' past relationship with the defendant).

Defendant also contends that other factors weigh against a finding of an independent basis of reliability. Def. Mot. at 5; Def. Reply at 8-9. Specifically, defendant points to (1) the Witness's contradictory statements regarding his exact location and what he saw the night of the murder; (2) the fact that the Witness made this identification after having been arrested; (3) the Witness's admission that he was drinking the night of the shooting; and (4) the absence of physical evidence placing the Witness at the crime scene. Def. Reply at 7-9. However, these

considerations do not impact the Court's determination that other factors -- namely, the Witness's past relationship with defendant, his focused observation of defendant's actions in furtherance of the alleged criminal activity, and the high level of certainty demonstrated by the Witness at the identification -- provide sufficient independent bases for reliability of the identification. Briscoe, 565 F.3d at 89. Of course, defendant may address these factors on cross examination should there be a trial at which the Witness testifies.

### C. Wade Hearing

In the alternative, defendant requests that the Court hold a pre-trial evidentiary hearing in order to assess whether the identification was obtained pursuant to an impermissibly suggestive procedure and without independent bases for reliability (a "Wade hearing"). See United States v. Wade, 388 U.S. 218 (1967). However, Wade hearings are not per se required to determine the admissibility of identification evidence. See United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984). In fact, motions for Wade hearings should be denied unless a defendant "makes a 'sufficient pre-trial showing of impropriety' regarding the challenged identification evidence." United States v. Durant, No. 18 Cr. 708 (CM), 2019 WL 2236233, at *3 (S.D.N.Y. May 15, 2019)

(internal citations omitted).

Based on the record, a Wade hearing is not warranted. Specifically, the Court finds that defendant has not proffered any evidence that actually disputes the material facts represented by the Government demonstrating that the identification is independently reliable. See United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) ("A party seeking to raise a factual issue to be determined at a hearing must submit admissible evidence which, if credited, would make out a prima facie case on the issue."). The Court therefore denies defendant's request for a Wade hearing regarding the identification procedure.

**II.  Motion to Suppress Physical Evidence**

Defendant also moves to suppress evidence extracted from two of his cell phones, arguing that the Government seized his phones without either a warrant or probable cause. Def. Mot. at 7-9. However, the Government represents that it does not intend to introduce any evidence obtained from defendant's cell phones at trial. Gov't. Opp. at 14. Accordingly, the Court denies this motion as moot. See United States v. Nejad, 436 F. Supp. 3d 707, 736 (S.D.N.Y 2020) (finding defendant's motion to suppress moot concerning documents the government indicated it would not rely on at trial); United States v. Mathieu, No. 16 Cr. 763 (LGS), 2018 WL

5869642, at *1-2 (S.D.N.Y. Nov. 9, 2018) (same with respect to evidence obtained from an email account that the Government represented it did not intend to use at trial).

### III. Motion to Compel Disclosure

#### A. Federal Rule of Evidence 404(b)

Williams also moves for the Court to preclude the Government from offering evidence at trial of defendant's crimes, wrongs, or bad acts pursuant to Rule 404(b) of the Federal Rules of Evidence. Def. Mot. at 11. Alternatively, he moves to compel the Government to disclose prior to trial (1) all evidence it intends to offer under Rule 404(b) and (2) the Government's proposed reasons for admissibility. Id.

Under Rule 404(b), while evidence of other crimes, wrongs, or acts "is not admissible to prove a person's character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). Given the express provisions of Rule 404(b), there is no basis for a blanket order of preclusion. However, upon request by a defendant, the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial . . . and . . . do so in writing before trial — or in any

-13-

form during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(3)(A), (C). However, Rule 404(b) "establishes no minimum time" for the Government to provide notice "because the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." United States v. Russo, 483 F. Supp. 2d 301, 309 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). Thus, whether notice is reasonable "depends on the circumstances of the case," United States v. Kevin, No. 97 Cr. 763 (JGK), 1999 WL 194749, at *13 (S.D.N.Y. Apr. 7, 1999), and Second Circuit courts "have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)," United States v. Gillier, No. 11 Cr. 409 (PAE), 2022 WL 179204, at *4 (S.D.N.Y. Jan. 19, 2022) (internal quotation marks and citations omitted).

    Here, Williams requests that the Court order the Government to provide notice of such evidence "sufficiently in advance of trial to allow Mr. Williams an adequate and fair opportunity to investigate and challenge the veracity and admissibility of such evidence, including making the necessary 404(b) motion to preclude the introduction of such evidence." Def. Mot. at 13. Neither a trial date nor a pre-trial schedule has been set, and Williams offers no reason why the Government must provide such notice at

this time. Moreover, the Government represents that it is mindful of its obligation to provide reasonable notice pursuant to Rule 404(b) and that it will comply with any trial briefing schedule ultimately set by this Court. Gov't. Opp. at 16. Accordingly, defendant's motion for the preclusion of or, alternatively, the early disclosure of, Rule 404(b) evidence is denied.

### B. Brady, Giglio, Jencks Act, and Co-Conspirator Statements

Finally, defendant moves for the early disclosure of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Jencks Act material under 18 U.S.C. § 3500. Def. Mot. at 13-15. Specifically, defendant seeks: (1) "any contradictory or inconsistent statements made to any law enforcement personnel/prosecutors by any individual[s], regardless of whether the government intends to call those individuals in its direct case"; (2) "any evidence that would tend to inculpate someone other than [defendant] in the counts charged in the indictment"; (3) any evidence that is inconsistent with the Government's case as it relates to defendant; (4) statements by any alleged co-conspirator that the Government intends to introduce at trial pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence; and (5) Giglio material for any non-testifying hearsay witnesses. Id.

Defendant's requests for early disclosure of impeachment materials and witness statements are premature and contrary to well-settled law holding that the Government is not generally required to disclose immediately all exculpatory and impeachment material upon a defendant's request. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001). Rather, the Government need only disclose Brady and Giglio material "in time for its effective use at trial." Id. at 146. A trial date has not even been set. While there is no dispute that defendant is entitled to receipt of the sought-after material (assuming it exists), the time of production is not set by defendant.

Moreover, the Court accepts the Government's good faith representations that it recognizes, has complied with, and will continue to comply with its disclosure obligations under Brady.[1] See ECF Nos. 7, 12. The Court also notes that the Government has represented that, consistent with its obligations, it "expects to provide all [Giglio and Jencks Act] material concerning its witnesses on a date that will be set by the Court." Gov't. Opp.

---

[1] The Court already has issued a Rule 5(f) order requiring the Government to comply with its Brady obligations. ECF No. 7. The Government also stated on the record at the November 16, 2022 conference that it has and will continue to comply with its Brady obligations. ECF No. 12.

at 14-15; see United States v. Rodriguez, No. 19 Cr. 779 (AKH), 2020 WL 5819503, at *10 (S.D.N.Y. Sept. 30, 2020) ("Courts in this Circuit have repeatedly declined to issue pretrial discovery orders pertaining to Brady and Giglio material, upon a good faith representation by the government that it has complied—and will continue to comply—with its disclosure obligations"); United States v. Mohamed, 148 F. Supp. 3d 232, 247 (E.D.N.Y. 2015) ("District courts within the Second Circuit have found the Government's pretrial representations that it will disclose Jencks Act material before trial to act as adequate reassurance that the Government will meet or exceed its Jencks Act obligations."). Accordingly, this motion is denied.  Any disputes over timing can be resolved when a trial date has been set.

**CONCLUSION**

For the foregoing reasons, defendant's motion is denied in its entirety. The Clerk of the Court is respectfully directed to close the motion pending at ECF No. 18. A status conference is scheduled for January 9, 2024 at 11:00 a.m. Speedy trial time is excluded until January 9, 2024. 18 U.S.C. § 3161(h)(7)(A).

**SO ORDERED.**

Dated:   New York, New York
         December 12, 2023

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE